UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILLIP SULLIVAN JR.,

                Plaintiff,

-v-

STUDY.COM LLC,

                Defendant.

18-CV-1939 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    This is a putative class action brought by Plaintiff Phillip Sullivan Jr. against Defendant Study.com LLC ("Study.com") under the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), the New York State Civil Rights Law ("NYSCRL"), and the New York City Human Rights Law ("NYCHRL"). Sullivan, who is legally deaf, alleges that Study.com offers online video courses and educational programs to consumers through its website (the "Website") in a manner that denies equal access to deaf customers. Study.com now moves to dismiss the complaint, or, alternatively, to strike Sullivan's class allegations. For the reasons that follow, Study.com's motion is denied.

**I. Background**

    **A. Factual Background**

    The facts below are drawn from Sullivan's complaint (Dkt. No. 1 ("Compl.")), and are assumed to be true for purposes of the instant motion.

    Sullivan is a legally deaf person who is unable to access the audio portion of a video without the assistance of closed captioning. (Compl. ¶ 15.) He alleges that in January 2018, he attempted to watch the video "Preparing Answers for a Job Interview" on the Website, but could not comprehend its content because it did not have closed captioning. (*Id.*) Consequently, he

1

filed the instant lawsuit in order "to ensure that deaf and hard of hearing individuals have equal access to the Website." (Compl. ¶ 17.)

B. **Procedural Background**

On March 5, 2018, Sullivan filed a five-count class action complaint against Study.com, raising denial of equal access claims under the ADA, the NYSHRL, the NYSCRL, and the NYCHRL. (Compl. ¶¶ 43–102.) Sullivan seeks to represent a class composed "all legally deaf and hard of hearing individuals in the United States who have attempted to access the Website and as a result have been denied access to the enjoyment of goods and services offered by the Website during the relevant statutory period." (Compl. ¶ 18.)

On June 18, 2018, Study.com moved to dismiss Sullivan's complaint pursuant to Rule 12(b)(6), or, alternatively, to strike Sullivan's class allegations pursuant to Rule 12(f). (Dkt. No. 13 at 1.) Sullivan filed an opposition on July 9, 2018. (Dkt. No. 19.) Study.com filed a reply on July 23, 2018. (Dkt. No. 23.) After the close of briefing of Study.com's motion, Study.com filed an affidavit from Ben Wilson, President of the Study.com, representing that all videos on Study.com had been closed captioned and that all future videos would also receive closed captions. (Dkt. No. 25 ¶ 3.) In light of Study.com's remedial efforts, the Court ordered Sullivan to brief this issue of whether Study.com's remedial measures rendered moot his ADA claim, and, if so, whether this Court retained jurisdiction over his state law claims. (Dkt. No. 26.) In response, Sullivan submitted evidence showing that at least four videos on the Website still did not have closed captions as of February 9, 2019. (Dkt. No. 27 at 2; Dkt. No. 28-1.) Study.com responded by submitting screenshots showing that the same videos were closed captioned as of February 13, 2019. (Dkt. Nos. 30, 31-1–31-4.)

Study.com's motion is now ripe for resolution.

## II. Legal Standards

### A. Motion to Dismiss

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The Court must accept as true all well-pleaded factual allegations in the complaint, and 'draw [ ] all inferences in the plaintiff's favor.'" *Goonan v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (alteration in original) (quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B. Motion to Strike Class Claims

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter," and may do so either *sua sponte* or "on motion made by a party." Fed. R. Civ. P. 12(f). "Motions to strike under Rule 12(f) are rarely successful." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 511 (S.D.N.Y 2015) (collecting cases). In the context of motions to strike class allegations, a Rule 12(f) motion will generally be deemed premature because it "requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 292 (S.D.N.Y. 2015) (quoting *Reynolds*, 136

3

F. Supp. 3d at 511). If, however, a motion to strike "addresses issues separate and apart from the issues that will be decided on a class certification motion," courts may address those issues before discovery. *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (internal quotation marks omitted).

## III. Discussion

### A. Sullivan's ADA Claim

Study.com's motion to dismiss Sullivan's ADA claim principally raises one issue—that the availability of transcripts accompanying un-captioned videos on the Website reasonably accommodates the deaf by effectively communicating the videos' contents. Citing *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89 (2d Cir. 2015), Study.com argues that transcripts are as a matter of law effective auxiliary aids sufficient to assist any hearing-impaired persons who wish to access its videos. (Dkt. No. 15 at 16.) In response, Sullivan contends that he has plausibly pleaded that the Wesbite's transcripts do not qualify as genuine auxiliary aids as are required by the ADA.[1] (Dkt. No. 19 at 10.)

To state a claim against Study.com under Title III of the ADA, Sullivan must allege that (1) he is disabled within the meaning of the ADA, (2) Study.com owns, leases, or operates a place of public accommodation, and (3) Study.com discriminates against him by denying him a full and equal opportunity to access the Website. *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008). Study.com disputes only the third element of Sullivan's ADA claim. With respect to the third element, Study.com is liable for "discrimination" within the meaning of the ADA if, among other things, it fails to provide "auxiliary aids and services" to ensure that the

---

[1] Sullivan seems to concede that the video he viewed did come with an accompanying transcript, although he does not directly plead so in his complaint. (*See generally* Dkt. No. 19.)

4

disabled are treated the same as other individuals.  *See* 42 U.S.C. § 12182(b)(2)(A)(iii).  For the hearing impaired, legally sufficient auxiliary aids and services may come in the form of "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments."  42 U.S.C. § 12103(1)(A).  Importantly, such auxiliary aids can be sufficient under the ADA only if they provide "effective communication."  28 C.F.R. § 36.303(c)(1).

Study.com contends that detailed transcripts that it provides immediately below each of the Website's videos provide effective communication to the hearing impaired, thereby satisfying the ADA's auxiliary aid requirement.  (Dkt. No. 15 at 9, 15.)  These transcripts, according to Study.com, amount to "reasonable and appropriate aid" for purposes of achieving the pedagogical purposes of its educational videos, because they allow viewers to "efficiently absorb and review [the information in the videos] for as long as necessary and at a self-guided pace."  (Dkt. No. 15 at 17.)  In support of this position, Study.com relies heavily on the Second Circuit decision in *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89 (2d Cir. 2015), arguing that the Second Circuit in *Noll* held that transcripts alone, even in the absence of closed captions, may be sufficient to reasonably accommodate the hearing impaired.  (Dkt. No. 15 at 16.)

In opposition, Sullivan contends that Study.com's reliance on *Noll* is misplaced, because the *Noll* court never addressed the effectiveness of transcripts as a form of reasonable accommodation.  (Dkt. No. 19 at 7.)  With respect to Study.com's videos in particular, he argues that transcripts cannot effectively communicate the information in the Website's videos to the hearing impaired because the reading of the transcripts "prevents [viewers like him] from actually engaging with the video itself," a result that is particularly troublesome because Study.com has conceded that its videos emphasize visual engagement and interactivity.  (*Id.* at

5

12–13.) Sullivan contends that the need to rely on a separate transcript below that video denies him the opportunity to engage with the visual aspects of the Website's videos real-time. (*Id.*)

The Court agrees with Sullivan that he has plausibly pleaded that a transcript alone is insufficient to provide effective communication of the contents of the Website's videos. Study.com misreads *Noll*. In *Noll*, the defendant International Business Machines ("IBM") provided one of its deaf employees both American Sign Language ("ASL") interpreter services and transcript services upon request to accommodate his need to access online video files. *Noll*, 787 F.3d at 95. Nonetheless, the plaintiff alleged that IBM still violated the ADA because not all of its videos were close captioned and because its transcript services were occasionally delayed. *Id.* Reviewing the lower court's grant of summary judgment to IBM, the Second Circuit did not dwell on the question of the effectiveness of IBM's transcript service. *Id.* Instead, it based its holding on the conclusion that the ASL interpreter service was itself a form of reasonable accommodation. *Id.* at 96–97. Because the plaintiff was fluent in ASL and IBM's ASL interpreters appeared to be qualified, the *Noll* court concluded that IBM provided the plaintiff with a reasonable accommodation in compliance with the ADA. *Id.* at 97. Thus, contrary to Study.com's representation in its moving brief that the "Second Circuit found that the record was clear that IBM had offered the plaintiff reasonable accommodations by providing him with written transcripts rather than captioned videos" (Dkt. No. 15 at 16), the Second Circuit's holding in *Noll* in fact did not concern the effectiveness of IBM's provision of transcripts to accompany its videos, but rather concerned the sufficiency of IBM's provision of ASL interpreter services. *Noll*, 787 F.3d at 97 ("In this case, [the plaintiff] was fluent in ASL, and there is no evidence that the interpreters IBM provided were unqualified or that the use of

interpreters was somehow inconsistent with [his] position as a software engineer. . . [W]e affirm on this basis.")

Perhaps recognizing the weaknesses of its initial argument, Study.com shifts gears in its reply brief. Instead of relying on *Noll* for the direct proposition that a video transcript is a reasonable accommodation, Study.com argues that *Noll* holds that "[a]n accommodation for deafness . . . cannot be rendered ineffective by the need to div[ide] visual attention, without more." (Dkt. No. 23 at 6 (quoting *Noll*, 787 F.3d at 96).) And according to Study.com, because Sullivan fails to allege why the Website's transcripts are ineffective, his ADA claim based on the Website's videos should fail.

Study.com's argument in its reply brief misses the mark for two reasons: Study.com takes the relevant quote from *Noll* out of context, and Study.com ignores Sullivan's fact-specific reasons as to why Study.com's transcripts are ineffective auxiliary aids. First, while *Noll* may have held that an accommodation that requires the hearing impaired to divide their visual attention is not ineffective *per se*, because "many accommodations of deafness—ASL interpretive services as well as captioning—will tax visual attention to some degree," the *Noll* court also cautioned courts to assess all of an accommodation's surrounding circumstances before deciding the "fact-specific" question of whether that accommodation is reasonable. *Noll*, 787 F.3d at 94, 96–97 ("Per se rules are unreliable in the disability context, so ASL interpretive services may not *always* constitute a reasonable accommodation. . . . Circumstances can be conceived in which the provision of interpreters would be less obviously reasonable, or even plainly *unreasonable*."). In other words, *Noll* does not provide a bright-line rule to determine categorically whether a given form of accommodation for the deaf is reasonable or not. Rather, it is a particular application of the Second Circuit's longstanding case-by-case approach for ADA

claims, an approach that requires courts to carefully consider a case's particular circumstances before deciding the reasonableness question. *Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 385 (2d Cir. 1996) ("Whether or not something constitutes a reasonable accommodation is necessarily fact-specific. . . . Therefore, determinations on this issue must be made on a case-by-case basis.").

Second, the Court notes that despite Study.com's assertions to the contrary, Sullivan indeed articulates a number of reasons why its transcripts fail to afford him full access to the content of Study.com's online videos. (Dkt. No. 19 at 6–19.) Viewing the inconvenience of splitting visual focus in the context of these additional case-specific circumstances, as the Court must in assessing Sullivan's ADA claim, *see Noll*, 787 F.3d at 94, confirms the plausibility of Sullivan's allegations that Study.com's failure to provide closed captioning for its Website's videos violated the ADA.

For example, Sullivan notes that Study.com's video transcripts are fundamentally different from the ASL interpretive service at issue in *Noll* or closed captioning generally in one central respect: Study.com's transcripts are not provided in real time. (Dkt. No. 19 at 7.) As a result, viewers "can easily lose their place, miss key elements on screen, [and] get out-of-sync with the video." (*Id.*) Thus, in relying on Study.com's transcripts, Sullivan suffers not only from the inconvenience caused by the need to shift his vision or focus, but also from the inability to absorb the same information or content as would a person without a hearing disability. These disadvantages are further exacerbated by the fact that many of the videos on Study.com are educational videos which place significant emphasis on interactivity and engagement. (*See, e.g.*, Dkt. No. 19 at 13 (describing Study.com's videos' emphasis on visualization and animation to "bring each concept to life").)

Given these alleged disadvantages that are attendant to Sullivan's forced reliance on Study.com's transcripts to access its videos, the Court concludes that it is plausible that a reasonable factfinder would determine that the transcripts accompanying the videos cannot provide effective communication to the hearing impaired, and thus that they do not satisfy the ancillary aid requirement under the ADA. At the very least, a more developed record is needed to better assess the efficacy of the transcripts. Accordingly, Study.com's motion to dismiss Sullivan's ADA claim on this basis must be denied.

Study.com interposes three additional arguments in support of its motion to dismiss Sullivan's ADA claims, none of which has merit. First, Study.com argues that the ADA only requires it to provide effective communication, not the aid of Sullivan's choice. (Dkt. No. 15 at 13.) But while Study.com is correct that it enjoys a certain degree of flexibility under the ADA in how it chooses to accommodate the deaf, *McElwee v. Cty. Of Orange*, 700 F.3d 635, 641 (2d Cir. 2012), Study.com acknowledges that its flexibility is constrained by its obligation to provide "effective communication" (Dkt. No. 15 at 13). For reasons already discussed, the Court concludes that Sullivan has plausibly pleaded that Study.com's video transcripts do not provide that effective communication. This does not mean that Study.com necessarily must adopt the remedial accommodation of Sullivan's choosing. But to the extent that Study.com publishes videos on the Website with only transcripts available to assist the deaf, Study.com may be in violation of the ADA. Its emphasis on the ADA's flexibility does not alter that conclusion.

Second, Study.com argues that its recent remedial efforts in captioning all of its videos moot Sullivan's ADA claim. (Dkt. No. 23 at 4.) To dismiss a Title III ADA claim as moot, a movant must demonstrate that "(1) there is no reasonable expectation that the alleged violation will recur *and* (2) interim relief or events have completely and irrevocably eradicated the effects

of the alleged violation." *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 201 (S.D.N.Y. 2016) (emphasis in original) (quoting *Gropper v. Fine Arts Hous., Inc.*, 12 F. Supp. 3d 664, 670 (S.D.N.Y. 2014)). Study.com fails to make this showing. While Study.com asserts that "new videos added to [the Website] will also receive captions" (Dkt. No. 23 at 5), the record belies this statement. An affidavit from Sullivan's counsel indicates that at least four videos on the Website did not have closed captioning as of February 9, 2019, months after the date that Study.com first asserted Sullivan's claims were moot. (Dkt. No. 28 at 2.) Accordingly, and even crediting Study.com's counsel's subsequent affidavit representing that those same videos were close captioned as of February 13, 2019 (*see* Dkt. No. 31), the record at best demonstrates that these videos were first captioned sometime between February 9, 2019 and February 13, 2019, and only after Sullivan's counsel notified Study.com and the Court of the alleged recurring violation. This showing is insufficient to satisfy Study.com's "formidable burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (emphasis added) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

Finally, Study.com contends that the complaint should be dismissed because it is inaccurate in alleging that "the Website as a whole is inaccessible." (Dkt. No. 23 at 2–4.) But for purposes of deciding the motion to dismiss, "[t]he Court must accept as true all well-pleaded factual allegations in the complaint, and 'draw [ ] all inferences in the plaintiff's favor.'" *Goonan*, 916 F. Supp. 2d at 478. For reasons already discussed, and assuming the truth of Sullivan's allegations, Sullivan's complaint plausibly alleges that the inaccessibility of several videos on Study.com caused the Website to be inaccessible to the deaf. Sullivan has therefore alleged a plausible ADA violation.

### B. Sullivan's State and City Law Claims

Study.com moves to dismiss Sullivan's state law claims under the NYSHRL, the NYSCRL, and the NYCHRL. (Dkt. No. 15 at 17–20.) It argues that because these state laws apply similar standards as the ADA, Sullivan's failure to state a claim under the ADA necessarily leads to the conclusion that his state law claims also fail. (*Id.*)

It is true that the NYSHRL and the NYCRL are governed by the same legal standards that courts apply to ADA disability discrimination claims. *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under [the NYSHRL] is governed by the same legal standards as govern federal ADA claims." (internal citations omitted)); *Ganzy v. Allen Christian Sch.*, 995 F. Supp. 340, 350 (E.D.N.Y. 1998) ("Facts sufficient to sustain a cause of action under [the disability discrimination section of NYSHRL] will support a cause of action under [the NYSCRL].") And the NYCHRL, although adopting a different and more liberal standard, has a one-way ratchet whereby the ADA standard constitutes its floor. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009). Accordingly, because Sullivan has established a plausible violation of the ADA, *see supra* Section III.A., the Court must for the same reasons deny Study.com's motion to dismiss Sullivan's state and city law claims, each of which is governed by identical or more liberal legal standards.

### C. Motion to Strike

Having concluded that Sullivan is entitled to proceed on all of his claims, the Court now considers Study.com's motion to strike Sullivan's class allegations.

Sullivan's complaint seeks class treatment under Federal Rules of Civil Procedures 23(b)(2) and 23(b)(3). (Compl. ¶¶ 18–19.) Rule 23(b)(2) allows for class treatment in cases where a party seeks injunctive relief that is generally applicable to the entire class. Fed. R. Civ. P. 23(b)(2). And Rule 23(b)(3) allows for class treatment where "questions of law or fact

common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Any class action—whether brought under Rule 23(b)(2) or 23(b)(3)—must also satisfy four preconditions set out in Rule 23(a): (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) the class representatives must have claims or defenses "typical of the claims or defenses of the class"; and (4) the class representatives must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

In support of its motion to strike Sullivan's class claims, Study.com argues that it will be impossible for Sullivan to certify the putative class because the proposed class would include paying members of Study.com, and that these class members would have each entered into arbitration agreements that included class-action waivers when signing up for membership with Study.com. (Dkt. No. 15 at 20–21.) Study.com also argues that Sullivan cannot satisfy the typicality requirement for the entire proposed class under Rule 23(a)(3), because he was not a paying member, and thus he did not sign the arbitration agreement that would have signed by other proposed class members. (*Id.* at 21–22.)

Because these arguments "mirror the class certification inquiry," they are premature. *Kassman v. KPMG, LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) (quoting *Davito v. AmTrust Bank*, 743 F. Supp. 2d 114, 115 (E.D.N.Y. 2010)). Study.com's first argument necessarily implicates the predominance issue under Rule 23(b)(3), because it raises affirmative defenses against some of the putative class members. And its second argument is plainly a challenge to the typicality element under Rule 23(a)(3). As such, these issues are "the same ones that would be decided in connection with determining the appropriateness of class certification under Rules

23(a) and 23(b)." *Id.* (quoting *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06 Civ. 6198, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008)). Because none of the issues raised by Study.com are "separate and apart from the issues that will be decided on a class certification motion," the Court declines to entertain them at this stage of the litigation. *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (internal quotation marks omitted).

While Study.com does identify a number of cases in which motions to strike class allegations were granted prior to the stage of class certification, each involved circumstances different than those at issue here. Specifically, each of these courts struck class allegations on the ground that the named plaintiffs were themselves bound by enforceable arbitration agreements. *See Camilo v. Uber Techs., Inc.*, No. 17 Civ. 9508, 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018) ("Plaintiff signed an agreement with Uber requiring that all disputes or issues, including the question of arbitrability, be resolved through binding arbitration."); *Castellanos v. Raymours Furniture Co.*, 291 F. Supp. 3d 294, 296 (E.D.N.Y. 2018) ("[P]laintiffs concede that they entered into a binding agreement to arbitrate the instant claims with Raymours."); *Marcario v. Midland Credit Mgmt., Inc.*, No. 2:17 Civ. 414, 2017 WL 4792238, at *4 (Oct. 23, 2017) ("This judicial admission by the Plaintiff in his amended complaint constitutes sufficient evidence that the Plaintiff . . . assent[ed] to the Arbitration Agreement."). But in this case, Sullivan is not alleged to have himself signed an arbitration agreement, nor is there any evidence at this stage with respect to how many other putative class members accessed Study.com as paying members. Study.com may or may not be able to establish affirmative defenses against only some of the putative class members based on the existence of arbitration agreements, and this fact may bear on the appropriateness of Rule 23 class certification. But this

speculative possibility does not warrant striking all of Sullivan's class allegations at this stage of the litigation pursuant to Rule 12(f).

The Court therefore denies Study.com's motion to strike Sullivan's class claims, albeit without prejudice to Study.com renewing any of the arguments it has raised in the instant motion at the class-certification stage.

## IV. Conclusion

For the foregoing reasons, Study.com's motion to dismiss and to strike class allegations is DENIED. Study.com shall file its answer to the complaint within 14 days of the date of this Opinion and Order.

The Clerk of Court is directed to close the motion at Docket Number 13.

SO ORDERED.

Dated: March 21, 2019
      New York, New York

                                         J. PAUL OETKEN
                                      United States District Judge